1

2

3

4                                UNITED STATES DISTRICT COURT

5                                     DISTRICT OF NEVADA

6    MERCEDES URBINA,                              Case No. 3:17-cv-00385-WGC

7                                   Plaintiff,     **ORDER**

8         v.                                       Re: ECF No. 37

9    NATIONAL BUSINESS FACTORS, INC.
     OF NEVADA,
10

11                                  Defendant.

12        Before the court is plaintiff Mercedes Urbina's Second Renewed Motion to Amend

13   Complaint and Proposed First Amended Complaint (FAC). (ECF No. 37.) Defendant National

14   Business Factors, Inc. of Nevada (NBF) filed a response (ECF No. 38), and Urbina filed a reply

15   (ECF No. 39). For the reasons set forth below, Urbina's motion is granted.

16                                   **I. BACKGROUND**

17        Urbina filed her original complaint pursuant to the Fair Debt Collection Practices Act

18   (FDCPA), 15 U.S.C. § 1692, et. seq., on June 20, 2017. (ECF No. 1.) Urbina alleged that she

19   received medical treatment from Tahoe Fracture Clinic, and received a bill on September 23, 2016,

20   indicating a balance of $614.52. On January 5, 2017, NBF, which had been assigned collection of

21   the debt from Tahoe Fracture Clinic, sent her a written demand for payment for $614.52 in

22   principal, and $29.07 in accrued interest. The complaint alleged violations of the FDCPA, and

23   specifically,15 U.S.C. § 1692e(2) and § 1692f(1), based on the allegation that Nevada law prohibits

24   a medical bill from accruing interest until thirty days after the issuance of an explanation of benefits

25   (EOB), and that NBF exceeded the allowable legal interest rate.

26        NBF filed its answer on July 12, 2017, and asserted, *inter alia*, an affirmative defense that

27   it calculated interest pursuant to Nevada Revised Statute (NRS) 99.040, from the date of Urbina's

28   last payment on February 26, 2016, through January 5, 2017 (the date of its initial communication

with Urbina), at the statutory legal rate of 5.5% in 2016 and 5.75% in 2017. (ECF No. 7.)

On August 25, 2017, Urbina filed a motion to amend the complaint, premised on the argument that Tahoe Fracture Clinic was a hospital, as the term is used in NRS 449.757, and interest may not accrue until thirty days after the patient is sent a bill stating the amount due after a determination concerning payment of the claim by an insurer has been made (with interest calculated at prime plus two percent). (ECF No. 14.) The motion to amend also argued for class status under Federal Rule of Civil Procedure 23. At a status conference on October 18, 2017, the motion was denied without prejudice; however, the court allowed Urbina to take limited discovery concerning whether Tahoe Fracture Clinic qualified as a hospital for purposes of NRS 449.757. (*See* Minutes at ECF No. 21.)

Urbina filed a second motion to amend the complaint on December 29, 2017, but it was denied without prejudice because it was not accompanied by a proposed amended complaint. (ECF Nos. 27, 28.)

On January 9, 2018, Urbina filed a renewed motion to amend the complaint, along with a proposed amended complaint. (ECF Nos. 31, 31-1.) The proposed amended complaint was again brought pursuant to the FDCPA, but this time was based on violation of NRS 449.757 as well as NRS 99.040. (ECF No. 31-1.) The proposed pleading once again asserted class status.

The court held a status conference on January 17, 2018. (*See* Minutes at ECF No. 36.) At that time, Urbina's counsel represented that she was abandoning her claim that Tahoe Fracture Clinic was a hospital, and as such, her claims insofar as they were premised on a violation of NRS 449.757 were being dismissed. In light of this, the court directed Urbina to file another renewed motion to amend to reflect the status of her claims. The court also advised Urbina that class relief appeared to be premature, but Urbina could seek leave to amend to assert class status at a later date, if appropriate.

Urbina filed her Second Renewed Motion to Amend Complaint and Proposed FAC on January 19, 2018. (ECF No. 37.) In the proposed FAC, Urbina asserts violations of the FDCPA: 15 U.S.C. § 1692e(2) (false representation of amount of debt), § 1692e(5)(threat to take action that cannot legally be taken), § 1692e(10) (false representation or deceptive means to collect debt), and

§ 1692f(1) (collection of unauthorized charge).  All four claims are predicated on NBF's alleged violation of NRS 99.040.

Urbina argues that her account with Tahoe Fracture Clinic was a "book account," as that term is defined in NRS 99.040, and book accounts are excluded from being authorized to charge interest unless the account has been settled. In the motion to amend and proposed FAC, Urbina claims she did not "settle" the account, but failed to pay it. Urbina asserts that under NRS 99.040, as well as case law from the Nevada Supreme Court, interest may only be assessed when the contract provides a definite sum of interest, states how the value is to be calculated, or the value is reasonably ascertainable. She further contends that the Nevada Supreme Court has ruled that only a trial court can determine at trial the date from which pre-judgment interest is assessed. To support her claims against NBF, Urbina relies on *Cruz v. International Collection Corp.*, 673 F.3d 991 (9th Cir. 2012), which found a collection agency contravened the FDCPA because it violated NRS 649.375 (discussed *infra*).

In its response, NBF argues that it was dealing with a settled book account; therefore, it properly proceeded with attempting to collect interest pursuant to NRS 99.040(1)(b). NBF contends that interest on the book account could be charged from the day on which the balance was ascertained, which it claims was after all payments by insurance and Urbina had been deducted.  It notes that Tahoe Fracture Clinic sent a "Final Notice" to Urbina on December 16, 2016, setting forth the balance due. NBF also argues that the cases Urbina relies on are inapposite because none addressed whether interest could be assessed under NRS 99.040(1)(b).

Insofar as Urbina claims that NBF violated NRS 649.375, NBF contends that NRS 649.375(2)(b) allows a collection agency to collect or attempt to collect interest by adding it to the principal of the debt when it is described as such in the first written communication with the debtor. NBF argues that it was authorized by NRS 99.404 to add interest, and described the interest being charged in addition to the principal in its first and only communication with Urbina on January 5, 2017.

///

///

1    With its response, NBF submits the declaration of Mary Hobbs. (ECF No. 38 at 7-8.)

2  Ms. Hobbs states that Urbina's account was assigned by Tahoe Fracture Clinic to NBC on

3  January 4, 2017. The principal amount of $614.52 did not include interest, but at that point, Tahoe

4  Fracture Clinic had credited all payments made by Urbina prior to the assignment. Tahoe Fracture

5  Clinic's billing statement of September 23, 2016, credited Urbina with four $30 payments made

6  on February 26, 2016, March 31, 2016, April 29, 2016, and August 12, 2016. The "Final Notice"

7  sent to Urbina by Tahoe Fracture on December 16, 2016, indicated a principal balance of $614.52.

8  (ECF No. 38 at 10.) Ms. Hobbs goes on to state that NBF calculated interest pursuant to

9  NRS 99.040(1)(b) because the balance on the account had been fully ascertained after application

10  of payments by Urbina or her insurance carrier. She indicates that interest was calculated from the

11  date of the last payment, August 12, 2016. NBF then mailed a single notice to Urbina on January 5,

12  2017, demanding payment of the principal balance of $614.52, plus $29.07 in interest. (ECF No.

13  38 at 12.)

14    In her reply, Urbina points out that in its answer, NBF stated that it calculated interest from

15  February 26, 2016 to January 5, 2017, pursuant to NRS 99.040, at 5.5% in 2016 and 5.75% in

16  2017. Now, Ms. Hobbs states in her declaration that interest was calculated from the date of the

17  last payment made by Urbina on August 12, 2016. Urbina posits that this cannot be correct. If

18  interest is calculated from February 26, 2016, as NBF claimed in its answer to the original

19  complaint, the amount of interest between February 26, 2016 and January 5, 2017, at the legal

20  rates of 5.5% in 2016 and 5.75% in 2017, amounts to roughly $29.07 (the amount of interest NBF

21  claimed it was entitled to in the January 5, 2017 notice). On the other hand, Urbina contends that

22  if interest was calculated from August 12, 2016, in order to reach $29.07 in interest, NBF was

23  either charging a higher, illegal rate of interest, or it did not actually calculate interest from that

24  date. Urbina argues that even if NBF was authorized by NRS 99.040 to assess interest, it did not

25  clearly describe it to her as such in the notice as required by NRS 649.375(2)(b). She contends that

26  there should have been an explanation or citation to a statute to show what authorized the

27  assessment of interest and how it was calculated.

28  ///

## II. LEGAL STANDARD

"A party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(A), (B). Otherwise, a party must seek the opposing party's written consent or leave of court to amend a pleading. Fed. R. Civ. P. 15(a)(2). Here, Urbina was required to seek leave to amend.

"The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend need not be given where amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Amerisource Bergen Corp. v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006) (citation omitted).

## III. DISCUSSION

As indicated above, leave to amend may be denied if the proposed amendment is futile or would be subject to dismissal. *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011). The court will therefore review whether Urbina states colorable claims for violation of the FDCPA so that she may proceed with the FAC, or whether amendment would be futile.

NRS 99.040 provides, in relevant part:
99.040. Interest rate when not fixed by express contract for certain types of transactions
1. When there is no express contract in writing fixing a different rate of interest, interest must be allowed at a rate equal to the prime rate at the largest bank in Nevada, as ascertained by the Commissioner of Financial Institutions, on January 1 or July 1, as the case may be, immediately preceding the date of the transaction, plus 2 percent, upon all money from the time it becomes due, in the following cases:
(a) Upon contracts, express or implied, other than book accounts.
(b) Upon the settlement of book or store accounts from the day on which the balance is ascertained.
…
The rate must be adjusted accordingly on each January 1 and July 1 thereafter until the judgment is satisfied.
…

Subsection 3 of NRS 99.040 defines a "book account." From the briefing, it appears that the parties agree that Urbina's account with Tahoe Fracture Clinic was a book account. The

question, however, is whether the book account was settled so as to authorize the assessment of interest under NRS 99.040(1)(b), and if so, whether NBF properly calculated interest.

In her reply brief, Urbina does not directly refute NBF's claim that the account was settled on the date the balance was ascertained. She does argue, though, that NBF either calculated interest from the wrong starting date (i.e., from a date before the balance was ascertained so the account was not settled), or if it calculated interest from the date of the last payment (August 12, 2016) or when Tahoe Fracture Clinic sent its "Final Notice" setting forth the final balance owed (December 16, 2016), then to get to the proffered accrued interest of $29.07 it had to have been charging a higher, illegal rate of interest than the agreed legal rate of 5.5% in 2016 and 5.75% in 2017.

Urbina points out a contradiction in NBF's answer, which claimed that it calculated interest from February 26, 2016, and the declaration of Ms. Hobbs, which claims interest was calculated from the date of Urbina's last payment on August 12, 2016. Urbina represents that to get to $29.07 in interest from August 12, 2016 to January 5, 2017, NBF would have had to have applied a much higher, illegal interest rate.

As the court views it, there are questions regarding whether and when Urbina's account with Tahoe Fracture Clinic became settled, and when NBF was permitted to begin assessing interest. NRS 99.040(1) provides interest may be calculated "upon all money from the time it becomes due." The parties do not specifically address when the money became due, which appears to be relevant in light of the fact that there were multiple services provided based on multiple contracts to provide services.

Urbina also asserts that NBF violated NRS 649.375, which discusses practices prohibited by collection agencies. It provides, in relevant part, that a collection agency shall not:
> 2. Collect or attempt to collect any interest, charge, fee or expense incidental to the principal obligation unless:
> (a) Any such interest, charge, fee or expense as authorized by law or as agreed to by the parties has been added to the principal of the debt by the creditor before receipt of the item of collection;
> (b) Any such interest, charge, fee or expense as authorized by law or as agreed to by the parties has been added to the principal of the debt by the collection agency and described as such in the first written communication with the debtor; or
> (c) The interest, charge, fee or expense has been judicially determined as proper

1    and legally due from and chargeable against the debtor.

2         Urbina asserts that the assessment of interest was not authorized by law, and the interest

3    was not judicially determined; therefore, she contends NBF attempted to collect interest in

4    violation of NRS 649.375(2). She relies on *Cruz v. International Collection Corporation,* 673 F.3d

5    991 (9th Cir. 2012) to support her position.

6         NBF, on the other hand, asserts that it was authorized to collect interest pursuant to

7    NRS 99.040, and properly added interest to the principal balance under NRS 649.3752(b), and it

8    was described as such in its first and only communication with Urbina.

9         In her reply, Urbina maintains that interest was not authorized, and even if it was, she

10   contends that it was not "described as such" in NBF's January 5, 2017 notice, which did not cite a

11   statute or otherwise explain why interest was authorized and how it was calculated.

12        First, *Cruz* is not dispositive here. In that case, Cruz wrote checks to Harrah's Reno that

13   bounced, and Harrah's subsequently assigned the claim to a collection agency, ICC. ICC sent

14   multiple demand letters for payment representing Cruz was responsible for paying various items,

15   including the principal balance, accrued interest, statutory fees for returned checks based on

16   California law, and treble damages. Cruz, on two occasions, sent letters back stating that the debt

17   was disputed and refused to pay. The Ninth Circuit concluded that under Nevada law, a debt

18   collector could not collect interest or fees unless the interest or fees were added to the principal by

19   the creditor before the debt collector received the item of collection, citing NRS 649.375(2)(a). It

20   found no evidence that Harrah's had added the interest or fees prior to assigning the debt to ICC.

21   As such, it found ICC's action to be false and misleading in violation of the FDCPA. It also

22   discussed a provision of the FDCPA (not applicable here) which prohibits contacting a debtor who

23   has notified the collector in writing that the debtor refuses to pay the debt.

24        It is not entirely clear why, but *Cruz* does not discuss the ability of a collection agency to

25   collect interest under NRS 649.375(2)(b), when assessing interest is authorized by law or agreed

26   to by the parties, and is described as such in the first written communication with the debtor. This

27   might have been because NRS 649.375(2)(b) could not apply because ICC did not utilize the

28   correct state's law in describing the amount it claimed it was owed; therefore, the assessment of

interest would not have been authorized under the law proffered. Since NBF asserts that it properly attempted to collect interest under NRS 649.375(2)(b), *Cruz* is not on point.

Turning back to this case, the FAC also presents an issue regarding what is required by NRS 649.375(2)(b). Does NRS 649.375(2)(b) require the collection agency to set forth an explanation or cite a statute describing what authorized the assessment of interest, and how it was calculated, as Urbina contends? Or, does it simply require the collection agency to clearly set forth the principal and interest sought, as NBF contends?

In sum, the court finds that Urbina states colorable claims for relief under the FDCPA in the proposed FAC as there are questions about whether NBF was authorized to assess interest under NRS 99.040(1)(b), and what is required by NRS 649.375(2)(b). Therefore, leave to amend is granted.

## IV. CONCLUSION

(1) Urbina's Second Renewed Motion to Amend Complaint (ECF No. 37) is **GRANTED**;

(2) The Clerk shall **FILE** the FAC (ECF No. 37 at 10-16); and

(3) NBF shall **FILE/SERVE** its answer or other responsive pleading within **21 DAYS** of the date of this Order.

The court will set a case management conference to discuss amended discovery deadlines and other scheduling deadlines.

**IT IS SO ORDERED.**

DATED: February 14, 2018.

William G. Cobb

_____
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE